1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   NANO-SECOND TECHNOLOGY CO., )   CV 10-9176 RSWL (MANx)
     LTD., a Taiwanese          )
12   Corporation,               )
                                )   **ORDER Re: Defendants'**
13                              )   **Motion for Partial**
                Plaintiff,      )   **Summary Judgment of**
14                              )   **Invalidity [230]**
         v.                     )
15                              )
                                )
16   DYNAFLEX INTERNATIONAL,     )
     a California Corporation., )
17   and GFORCE Corp. d/b/a DFX  )
     SPORTS & FITNESS, a Nevada  )
18   Corporation,               )
                                )
19   _____   )
                Defendants.      )

20        Currently before the Court is Defendants Dynaflex

21   International and GForce Corporation's ("Defendants")

22   Motion for Partial Summary Judgment of Invalidity

23   [230].  The Court having reviewed all papers submitted

24   pertaining to this Motion and having considered all

25   arguments presented to the Court, **NOW FINDS AND RULES**

26   **AS FOLLOWS:**

27        The Court hereby **GRANTS** Defendants' Motion for

28   Partial Summary Judgment.

                              1

## I. BACKGROUND

Plaintiff Nano-Second Technology Co. ("Plaintiff") brought this Action against Defendant Dynaflex International and Defendant GForce Corporation d/b/a DFX Sports & Fitness ("Defendants") alleging infringement of Plaintiff's patent, United States Patent No. 5,800,311 ("'311 Patent").

The patent-in-suit involves a gyroscopic wrist exerciser containing light emitting diodes, a counter, and a string used to impart rotation on the rotor. See ECF No. 230-1, Schwartz Decl., Ex. 1. (the '311 Patent).

Specifically, the wrist exerciser (10) claimed in the '311 patent includes a spherical rotor (40) mounted on a ring (30) within a hollow spherical casing (60),(11).  The exerciser comes with a flexible rope (56) with a rigid end (55) that is inserted into a driving hole (45) formed in the groove (42) of the rotor (40).  The rope (56) sits on the groove (42) and wraps around the rotor (40).  The user can hold the exerciser (10) in one hand, while pulling the rope (56) with the other, to impart rotation to the rotor (40).  Once the rotor (40) is given an initial spin, the user can gyrate the exerciser manually to cause the rotor to precess about an axis perpendicular to its spin axis.

The wrist exerciser (10) is also equipped with lighting elements (43) in the form of light emitting diodes (LEDs) arranged in the groove (42) of the rotor

2

(40).  The LEDs are energized by coils (53) that are mounted on the rotor (40) and a magnet (34) that is mounted on the ring (30).  The coils rotate within the magnetic lines of force of the magnet, which induces an electric current within the coils, and provide electricity to the LEDs.  Finally, the wrist exerciser contains a counter (20) that displays the number of rotations of the rotor.

Plaintiff has asserted claims 1-5, 7, 9-12, 15, and 17 ("asserted claims") of the '311 Patent in this Action.  Defendant moves for partial summary judgment of invalidity on each of these claims.  Claims 1 and 15 are independent claims.

Claim 1 recites the following:

> A wrist exerciser comprising a spherical casing having a first axis and a second axis substantially perpendicular to each other, a ring received within the spherical casing to be concentric with and rotatable about the first axis with respect to the casing and a spherical rotor received within the ring and having a rotational axis co-linear with the second axis to be rotatable about the second axis with respect to both the casing and the ring, the rotor having an outer surface on which a circumferential groove is formed with a driving hole formed in the groove, a flexible rope having a rigid end receivable in and engageable

with the driving hole. The flexible rope being
windable around the outer surface of the rotor
along the groove through a top opening formed
on the casing so that the rotor is driven to
rotate about the second axis by pulling to
unwind the rope from the rotor, light
generation means mounted on the rotor to emit
light during the rotation of the rotor.

Claims 2, 5, and 9 depend on Claim 1.   Claim 2
discloses the additional limitation of "electrically
driving lighting elements disposed in the groove" and
an "electrical generator means."   Claim 5 discloses the
additional limitation of a "counter".   Claim 9
discloses the further limitation of partition plates
that generate sound during rotation of the rotor.
Claim 7 depends on Claim 5, and discloses a counter
attached to the bottom opening of the casing, with a
proximity detector actuateable by a magnet fixed in the
groove of the rotor.

Claim 15 is identical to Claim 1 except that Claim
15 recites "a counter being provided to count the
rotations of the rotor about the second axis" instead
of "light generation means."   Claim 17 depends upon
Claim 15, and discloses the additional limitation of a
counter having a proximity detector actuateable by a
magnet fixed in the groove of the rotor.

Previously, the Court construed the following
claim terms: "driving hole"; "light generation means";

4

and "electrical generator means" [97].

The Court construed "light generation means" as a means-plus-function claim.  The claimed function is "to generate light and emit light during rotation of the rotor".  The Court found that the following structure corresponds to this function:

> A ring magnet fixed to the ring and coaxial with the second axis and two coils fixed to the rotor and corresponding to the ring magnet for generating electrical current to power the light-emitting diodes [LEDs], which are disposed in the groove of the rotor and electrically connected to the coils.

The Court construed "electrical generator means" as a means-plus-function limitation.  The claimed function is "supplying electrical current to the lighting elements."  The Court construed the corresponding structure as "coils that cut through the magnetic line of force provided by the ring magnet; and a ring magnet fixed to the ring and coaxial with the second axis and two coils fixed to the rotor and corresponding to the ring magnet for generating electrical current to power the LEDs."

In its Motion, Defendants assert that at least five pieces of prior art render the '311 Patent obvious: U.S. Patent No. 5,353,655 ("the '655 Patent"); U.S. Patent No. 3,726,146 ("the Mishler '146 Patent"); U.S. Patent No. 3,945,146 ("the Brown '146 Patent"); U.S.

Patent No. 4,150,580 ("the '580 Patent"); and U.S. Patent No. D365,612 ("the '612 Patent").

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (2007).

Once the moving party makes this showing, the non-moving party must set forth facts showing that a genuine issue of disputed material fact remains.  Celotex, 477 U.S. at 322.  The non-moving party is required by Federal Rule of Civil Procedure 56(e)[1] to go

---

[1] The Federal Rules of Civil Procedure were amended on December 1, 2010. Federal Rule of Civil Procedure 56(e) has now been codified as Federal Rule of Civil Procedure 56(c).

beyond the pleadings and designate specific facts showing a genuine issue for trial exists.  Id. at 324.

**B.  Obviousness**

A party seeking to establish that patent claims are invalid must overcome the statutory presumption of validity set forth in 35 U.S.C. § 282 by clear and convincing evidence.  Impax Labs., Inc. v. Aventis Pharms., Inc., 545 F.3d 1312, 1314 (Fed. Cir. 2008).

A patent is invalid for obviousness under 35 U.S.C. § 103 "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  Takeda Chem. Indus. v. Alphapharm Pty., Ltd., 492 F.3d 1350, 1355 (Fed. Cir. 2007).

Obviousness analysis is "objective":

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.  Against this background the obviousness or nonobviousness of the subject matter is determined.  Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007) (quoting Graham v. John Deere Co. of Kansas City, 383 U.S. 1 (1966), and stating that the Graham factors still control).

"[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." Id. at 418.

In other words, obviousness depends on "whether the improvement is *more than the predictable use* of prior art," and whether there were *reasons* (e.g. demand, need, or problem known in the field or market) to combine the known elements or make such improvements in the fashion claimed by the patent at issue. Id. at 417-18 (emphasis added).

The "combination of familiar elements according to known methods" is likely to be obvious when it "does no more than yield predictable results." Id. at 416. If an ordinarily skilled artisan can implement a predictable variation of a work available in the same field of endeavor or a different one, section 103 likely bars patentability of the variation. Id.

"Whether an invention would have been obvious under 35 U.S.C. § 103 is a question of law . . . based upon underlying factual questions." Takeda Chem., 492 F.3d at 1355. Summary judgment may be appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." KSR Int'l Co., 550 U.S. at 427 (citing Graham, 383 U.S. at 17).

### III. EVIDENTIARY OBJECTIONS

As part of its Reply, Defendants filed an Ex Parte Application to strike portions of the declaration of Tony M. Lu, Plaintiff's counsel, filed with Plaintiff's Opposition [264]. The Court construed the Ex Parte Application as part of the Reply because the Ex Parte Application contains evidentiary objections that are ordinarily filed as part of the Reply. Plaintiff did not file a response.

The Court **SUSTAINS** Defendants' evidentiary objections to Paragraphs 5 through 8, and 10 through 14 because they offer improper legal conclusions or expert testimony.

### IV. ANALYSIS

A. <u>Ordinary Skill in the Art</u>

The obviousness analysis requires determining the level of ordinary skill in the pertinent art. See Graham, 383 U.S. at 17-18. "Ascertaining the level of

9

ordinary skill in the art is necessary for maintaining objectivity in the obviousness inquiry." See Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714, 719 (Fed. Cir. 1991). Factors to consider include the educational level of the inventor, the educational level of those who work in the relevant industry, and the sophistication of the technology involved. See id.

Defendants contend that the level of ordinary skill in the art is as follows: a person having two or more years of post-secondary education in mechanical design and one or two years of experience designing toys, fitness devices or other electromechanical objects. Alternatively, one of ordinary skills could have been a high school graduate with aptitude for mechanical devices and two or more years designing toys, fitness devices, or other electromechanical objects. Schwartz Reply Decl. Ex. 1, Expert Report of Dr. Vijay Gupta on Defendants' Contention that the Asserted Claims of U.S. Patent No. 5,800,311 Are Invalid ("Gupta Report"), ¶ 49.

On the other hand, Plaintiff contends that a person of ordinary skill in the art would have a good understanding of the theory and practice of electronics hardware and mechanical design. A person of ordinary skill would thus have a Bachelor's degree or equivalent in Electrical Engineering, Mechanical Engineering, or Electronics and a year of relevant experience. Lu Decl., Ex. 1, Expert Report of Dr. Chi On Chui ("Chui

1  Report"), ¶ 34.

2      The Court finds that the slight differences

3  identified by the Parties are not material to this

4  Motion.  Although Plaintiff appears to dispute the

5  level of ordinary skill in the art, citing a slightly

6  higher level, Plaintiff has not demonstrated how this

7  is relevant to any of its analysis.  For the purposes

8  of this Motion, the Court assumes that a person of

9  ordinary skill in the art possesses the qualities

10  identified by Plaintiff: one of ordinary skill in the

11  art would have a good understanding of electronics

12  hardware and mechanical design.  Such person will have

13  a Bachelor's degree from a four-year college in

14  Electrical Engineering, Electronics, and Mechanical

15  Engineering, and a year of relevant experience.

16  **B.   Scope and Content of the Prior Art**

17      Under the Graham test for obviousness, the Court

18  must also determine the scope and content of the prior

19  art.  The scope of prior art is only that art which is

20  analogous.  See In re Clay, 966 F.2d 656, 658-59 (Fed.

21  Cir. 1992).  Analogous art is art that is not "too

22  remote to be treated as prior art."  In re Clay, 966

23  F.2d at 657.  In addition, a prior art reference is

24  analogous if it is from the same "'field of endeavor,'

25  even if it addresses a different problem, or, if not

26  within the same field, if the reference is 'reasonably

27  pertinent' to the particular problem with which the

28  inventor is involved."  In re Conte, 36 Fed. Appx. 446,

450, 2002 WL 1216965, *4 (Fed. Cir. 2002) (citing In re Clay, 966 F.2d at 658-59).   The determination of relevant prior art is a question of fact.   In re Clay, 966 F.2d at 658.

Relevant prior art is further defined by 35 U.S.C. §§ 102(a) and (b), which limit the time frame within which prior art can be found.   Sections 102(a) and (b) provide:

A person shall be entitled to a patent unless --

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

Defendants contend that the asserted claims of the '311 patent are invalid because they are obvious in view of prior art.   Defendants point to five prior art patents in doing so:

**1.   U.S. Patent No. 5,353,655 ("the '655 Patent"):**

The '655 Patent issued on October 11, 1994.   The '655 Patent discloses a gyroscopic wrist exerciser with a spherical housing (10) and a rotor (12) within the housing.   The rotor is mounted on a shaft (14) that

provides the spin axis (or the first axis) (36) for the rotor.  The shaft ends (28) fit in notches (26) in a circular guide ring (24).  The circular guide ring (24) sits in a circumferentially-extending groove (22) in the housing.  The guide ring (24) rotates about the groove (22) around a second axis perpendicular to the ring.  A user can initiate the rotation of the rotor by engaging the open end (16) of the casing or by running the device along a surface.  The user can also manually gyrate the wrist exerciser, about a third axis perpendicular to the first and second axes, causing the rotor to precess about the second axes.  This generates a torque about the third axis.

     The wrist exerciser also includes coils (42) and permanent magnets (41) that use the rotation of the rotor to "generate electricity for operating various electrical visual or audio devices".  These devices can include lights or counters.  In one embodiment of the patent, the coil (42) is embedded in the housing (10), and the magnets (41) are mounted in the "outer periphery of the rotor".  In another embodiment, the magnets are embedded in the housing and the coil is mounted on the rotor.  The coils form a circuit with brushes and plate-like members, providing electricity to the audio or visual devices.  See Schwartz Decl. Ex. 2.

///

**2.  U.S. Patent No. 3,726,146 ("the Mishler '146 Patent"):**

The Mishler '146 Patent issued on April 10, 1973. The patent discloses a hand-held gyroscopic device comprising of a rotor (12) mounted within a cylinder (10) for rotation about perpendicular axes.  The rotor includes a shaft (14) having a hole (34).  The hole (34) receives a string that can be wrapped around the shaft (14).  The user can impart rotation on the rotor by pulling on the string, and can manually gyrate the spinning rotor to cause the rotor to precess, generating a torque felt by the user.  Id. Ex. 4.

**3.  U.S. Patent No. 3,945,146 ("the Brown '146 Patent"):**

The Brown '146 Patent issued on March 23, 1976.  It discloses a gyroscope with a casing (11) housing a rotor (42), a shaft (26) and a starter element (39). A starter cord (22) is wound around a hub (50) of the starter element (39).  Pulling the cord imparts rotation to the starter element.  Id. Ex. 5.

**4.  U.S. Patent No. 4,150,580 ("the '580 Patent"):**

The '580 Patent issued on April 24, 1979, and discloses a gyroscopic exerciser consisting of a spherical shell (10) and a rotor (18) mounted within the shell.  The rotor has partition plates (90-96) that divide the central bore of the rotor into quadrants. The plates pull air into the shell during high rotational activity, cooling the exerciser.  Id. Ex. 6.

14

**5.   U.S. Patent No. D365,612 ("the '612 Patent"):**

The '612 Patent issued on December 26, 1995, which is a design patent for a gyroscopic exerciser.  The patent depicts a rotor mounted for rotation within a spherical housing.  <u>Id.</u> Ex. 7.

Defendants also contend that gyroscopic devices have appeared in advertisements since 1991.  A number of these devices use string wound within a circumferential groove in the rotor to impart rotation on the rotor.  Schwartz Decl. Ex. 8.

The Court finds that the prior art cited above are analogous prior art and sufficient to establish obviousness by clear and convincing evidence.  Each of the prior arts are in the same field of endeavor as the '311 Patent, because they all relate to gyroscopic exercisers or gyroscopes.  Plaintiff does not dispute the use of Defendants' cited prior art.

Further, the cited prior art also conforms to the time requirements of 35 U.S.C. §§ 102(a) and (b), because they were printed or patented before the filing of the '311 Patent, which is December 3, 1997.  Schwartz Decl. Ex. 1.  The Court notes that none of these references were considered by the U.S. Patent and Trademark Office (USPTO) during the initial examination of the '311 Patent.

**C.   <u>The Differences Between the Prior Art and Claimed Invention</u>**

The final element in the <u>Graham</u> analyses requires

15

the determination of any differences between the teachings found in the prior art and the claimed invention, from the vantage point of a hypothetical person with ordinary skill in the art.  See Graham, 383 U.S. at 17-18; Velander v. Garner, 348 F.3d 1359, 1380 (Fed. Cir. 2003).  The claims of the patent-in-suit must be considered "as a whole."  W.L. Gore & Assoc., Inc. v. Garlock, Inc., 721 F.2d 1540, 1547-48 (Fed. Cir. 1983).  It is "[t]he claims, not [the] particular embodiments [that] must be the focus of the obvious inquiry."  Jackson Jordan, Inc. v. Plasser Am. Corp., 747 F.2d 1567, 1578 (Fed. Cir. 1984).  Although it is entirely proper to use the specification of the patent to interpret what the patentee meant by a word or phrase in a claim, adding to the claim an extraneous limitation appearing in the specification is improper. See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433 (Fed. Cir. 1988) (citations omitted).

On balance, the Court finds that there is little difference in the teachings of the prior art and the independent claims of the '311 Patent.

As to Claim 1, as argued by Defendants, the '655 Patent teaches a spherical casing and a rotor received in a ring, which rotates about an axis perpendicular to the ring.  The ring sits within the housing.

The '655 Patent also teaches the use of magnets and coils to generate electricity used to energize LEDs, as

claimed in the '311 Patent.  Although the LEDs, magnets, and coils of the '655 Patent are not arranged in the same manner as in the '311 Patent, they perform the same function, and achieve the same result.  As described by Defendants, in both the '311 Patent and the '655 Patent, the coils generate electricity by cutting through the magnet's lines of force.  The location of the magnets, coils, and LEDs is merely a matter of design choice and does not change the overall operation of the exerciser.  There are only a few places in the exerciser where one of ordinary skill could place a magnet, coils, and lighting elements. Gupta Report ¶¶ 88, 92 ("Details of the actual size, shape, type, and number of magnets and coils and their specific locations on the rotor and housing are essentially design choices and not new inventions."). A person of ordinary skill in the art would be expected to consider and effectuate mere design changes to the gyroscope involving the arrangement of magnets, coils, electrical circuits, and lights.  Gupta Report ¶ 89 ("Someone designing a gyroscopic wrist exerciser in 1997, and wanting to add some form of electrical generator to run lights or other devices, could start with a structure equivalent to the electrical generator disclosed in the '655 Patent.  It is a matter of choice for one of ordinary skill.").

Plaintiff has not identified how the specific location of the LEDs, magnets, and coils in the '311 is

distinguishable from the location of the magnets, coils, and LEDs in the '655 Patent, or somehow generates a novel or unexpected result.  See Application of Kuhle, 526 F.2d 553, 555 (C.C.P.A. 1975) ("[T]he particular placement of the [battery] contact provides no novel or unexpected result.  The manner in which electrical contact is made for Smith's battery would be an obvious matter of design choice within the skill of the art. . . . use of a spring-loaded contact in the manner claimed is well known with the common flashlight.") (citations omitted).  Plaintiff cites to its expert's testimony that the location of the coils and magnets in the '311 Patent results in a more "efficient" means to generate electricity, but this opinion is conclusory and unsupported by any evidence. Thus the Court finds that it is insufficient to defeat summary judgment.  Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316 (Fed. Cir. 2001) ("broad conclusory statements offered by [Plaintiff's] experts are not evidence and are not sufficient to establish a genuine issue of material fact.").

The only limitation of Claim 1 that the '655 Patent does not teach is the use of a string to impart rotation on the rotor.  The Mishler '146 and the Brown '146 both teach this missing limitation.  Although neither discloses the use of a groove formed on the surface of the rotor to accommodate a string or a string with a rigid end, one of the ordinary skill

18

would have found it obvious to modify the rotor of the '655 Patent to contain a groove, and to make the string end rigid.  A rigid end makes it easier to insert a string into a driving hole, and a groove in the rotor would enable the use of the string to impart rotation on the rotor.  Gupta Report ¶ 111.  These are merely design alternatives to solving the problem of how to impart rotation on the rotor.  Id. ¶ 111.  Further, the known prior art depicted in Figure 5 of the '311 Patent depicts the use of a groove on the rotor, a driving hole, and a flexible rope with a rigid end.

Next, the Court finds that there was an incentive to combine the teachings of the '655 Patent with the Mishler '146 and Brown '147 to provide an alternative means to impart rotation to the rotor of the '655 Patent.  The Mishler '146 Patent itself identifies the use of a string as an alternative to spinning the rotor by hand.  Schwartz Decl., Ex. 4 (Mishler Patent), 3:29-40 ("It will be apparent that the rotor 12 of FIGS. 1 and 2 can be given an initial spin by holding the support structure 10 of the device in one hand and rapidly moving the other hand in a direction perpendicular to the shaft 14 in a path which engages the palm of the hand with the rim of the rotor.  Alternatively the shaft 14 may have a hole 34 extending diametrically through the shaft as shown in FIG. 2 and one end of a string may be inserted through such hole and the string wrapped around the shaft.  Pulling the

string will then spin the rotor 12."). The incentive
to combine prior art references can come from the prior
art itself or be reasonably inferred from the "nature
of the problem to be solved, leading inventors to look
to references related to solutions to that problem."
Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc., 75
F.3d 1568, 1573 (Fed. Cir. 1996). Further, Defendants
have provided evidence, which Plaintiff does not
dispute, that the wrist exerciser industry sought to
improve the attractiveness of ordinary gyroscopic
exercisers to consumers by adding additional features,
such as an alternative means to impart rotation on the
gyroscope and fanciful lighting elements. See Gupta
Decl. ¶¶ 104-105. A person of ordinary skill would be
motivated to make improvements and add appealing
features to a basic wrist exerciser to enhance its
marketability. Id. ¶ 109-110.

Plaintiff's only other argument is that there is
"no reasonable expectation of success" to combine the
teachings of the '655 and Mishler and Brown '146
Patents, but again this is conclusory. Further, this
is not a requirement to finding obviousness. See KSR
Int'l Co., 550 U.S. at 415 (holding that the
obviousness analysis is flexible and expansive).

The Court finds the remaining independent claim,
Claim 15, is identical to Claim 1 except that Claim 15
recites "a counter being provided to count the
rotations of the rotor about the second axis" instead

of "light generation means."  The '655 Patent teaches
the use of a counter.  For the reasons discussed above
in relation to Claim 1, the Court finds Claim 15
obvious.

The Court finds the remaining dependent claims of
the '311 Patent obvious, as follows.

Claim 2 of the '311 Patent is obvious over the '655
Patent in view of the Mishler '146 or Brown '146
Patents.  The claimed function of Claim 2 is similar to
that disclosed in the '655 Patent.  In the '655 Patent,
electricity is generated by coils and magnets that
energize LEDs connected to the coils.  Further, the
claimed structure of Claim 2, involving the arrangement
of magnets and coils on the rotor, is similar to the
arrangement of magnets and coils disclosed in the '655
Patent, as discussed above.

Claim 3 depends on Claim 2, and adds "wherein the
generator means comprises at least one coil of
conductive wire fixed on the rotor to be in electrical
connection with the lighting elements and a magnet
fixed to the ring and having magnetic line of force,
the magnet being positioned corresponding to the coil
so that the rotation of the rotor moves the coil to cut
through the magnetic line of force of the magnet and
thus induce an electrical current in the conductive
wire of the coil which is supplied to light the
lighting elements."  The Court finds that for the same
reasons as Claims 1 and 2, Claim 3 is obvious over the

'655 Patent in view of the Mishler '146 or Brown '146 patents as applied to Claim 1.  The magnets and coils of the '655 Patent generate an electrical current, as the coils "cut through the magnetic line of force of the magnet".  The disposition of the coils and magnets is merely a design choice.

Claim 4 depends on Claim 3, and adds "wherein the generator means comprises two coils provided on two opposite sides of the rotational axis of the rotor." The Court finds that for the same reasons as Claims 1-3, Claim 4 is obvious over the '655 Patent in view of the Mishler '146 or Brown '146 patents as applied to Claim 1.  Again, although Plaintiff argues that the '655 Patent discloses a different arrangement of coils and magnets than the '311 Patent, it has not explained how the structure disclosed in the '311 Patent is novel.  As discussed above, the arrangement of the magnets and coils in the '655 Patent generates an electric current in the same way as the magnets and coils in the '311.  How they are arranged is a matter of design choice.

Claim 5 depends on Claim 1, but adds a "counter." For the reasons discussed above for Claim 1, the Court finds that Claim 5 is obvious over the '655 Patent in view of the Mishler '146 and Brown '146 Patents as applied to Claim 1.  Plaintiff acknowledges that the '655 Patent discloses a counter.  The Court finds that there was a motivation to add a counter to a wrist

exerciser because it would have enhanced the
attractiveness of the wrist exerciser to customers.
Gupta Report ¶ 117.

Claim 7 depends on Claim 5, and adds "wherein the
casing comprises a bottom opening and wherein the
counter comprises a surface which is attached to the
bottom opening of the casing, the surface having a
proximity detector mounted thereon to be corresponding
to and actuateable by a magnet fixed in the groove of
rotor so as to obtain the rotation turns of the rotor,
the counter comprising a display to show number of the
rotation turns."  The Court finds that Claim 7 is
obvious over the '655 Patent in view of the Mishler
'146 or Brown '146 Patent as applied to Claim 1.  The
'655 Patent discloses the use of a counter on a wrist
exerciser for counting the number of rotations made by
the rotor.  Further, the Court finds that all counters
require sensors, and that one of ordinary skill in the
art would have been able to mount a sensor, such as a
magnet, on the rotor to actuate the counter.

Although the '655 Patent does not disclose a
particular *location for the counter*, the specific
arrangement of the counter involves nothing more than a
design choice.  Gupta Report ¶ 120.  Moreover, there
are only so many places on the wrist exerciser where
one can attach a counter.  See KSR, 550 U.S. at 416
(The "combination of familiar elements according to
known methods" is likely to be obvious when it "does no

more than yield predictable results."). A person of ordinary skill of the art would have found it obvious to mount a counter on the bottom of the '655 Patent.

The Court also finds that Claim 9 of the '311 Patent is obvious over the '655 Patent in view of the Mishler '146 or Brown '146 Patent as applied to Claim 1. The '580 and '612 Patents both teach the use of rotor fins that cause air to enter the interior of the shell. The '580 Patent identifies a reason for adding fins to a rotor: to "provide internal cooling of the entire device as the rotor turns." Schwartz Decl. Ex. 6, 1:46-49; <u>see</u> <u>also</u> Gupta Report ¶¶ 122-123. Sound is generated when air whips through the device. One of ordinary skill in the art would have found it obvious to modify the rotor of the '655 Patent to include fins and partitions to generate sound, as claimed in Claim 9.

The Court finds that Claim 10 is similar to Claim 9, except that Claim 10 includes an additional partition plate. Both the '580 and '612 Patents disclose the use of multiple partition plates. For the same reasons as discussed above, the Court finds that Claim 10 of the '311 Patent is obvious over the '655 Patent in view of the Mishler '146 or Brown '146 Patent as applied to Claim 1. Plaintiff also does not dispute that the '580 Patent discloses the additional limitation of Claim 10.

Claim 11 depends on Claim 9, and recites "wherein

each of the chambers comprises a weight block fixed therein." For the same reasons as discussed above, the Court finds that Claim 11 of the '311 Patent is obvious over the '655 Patent in view of the Mishler '146 or Brown '146 Patent as applied to Claim 1, and further in view of the '580 Patent. A person with ordinary skill in the art, motivated to increase the rotational speed of the rotor, would have been able to modify the rotor of the '655 Patent to include a weight block, such as a metal ring disclosed in the '580 Patent.

Claim 12 depends on Claim 2, and adds "wherein the lighting elements comprise light emitting diodes." The '655 Patent discloses the use of LEDs. For the reasons discussed above in relation to Claim 2, the Court finds Claim 12 obvious.

Finally, Defendants point out that Claim 17 is identical to Claim 7, with exception that claim 7 depends from Claim 5. Thus for the same reasons discussed for Claim 7, Claim 17 is obvious.

Accordingly, the prior art teaches the limitations in the asserted claims in this Action. The Court finds that Defendants have shown by clear and convincing evidence that the asserted claims are obvious.

///

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment of Invalidity.

**IT IS SO ORDERED.**

DATED: May 10, 2013

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge